### UNITED STATES v. ROCKEFELLER et al.

(District Court, S. D. New York.  April 16, 1915.)

CRIMINAL LAW ⬥⟿622—TRIAL—SEVERANCE.

. In a prosecution of the directors of a railroad company for the violation of the Anti-Trust Act, where it appeared that a suit had been several years before instituted against the corporation, charging it with violating that act in making certain combinations, which suit had later been dismissed by the Attorney General for the stated reason that the Legislature of the state which was most affected by the principal combination had enacted a law permitting such combination under certain conditions and restrictions, intended to safeguard the rights of the people, and that the other combinations had been declared ultra vires and were being discontinued, the directors, who had been elected to the board after the discontinuance of the former suit, are entitled to a separate trial, since the evidence as to them would be different, and their defenses different, and might be antagonistic to the defense of the other directors.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1380–1383, 1385, 1386, 1388–1390; Dec. Dig. ⬥⟿622.]

William Rockefeller and others were indicted for a violation of the Anti-Trust Law, and defendants Baker and others apply for a severance.  Applications granted.

See, also, 221 Fed. 462.

H. Snowden Marshall, U. S. Atty., of New York City, and R. L. Batts and Frank M. Swacker, Sp. Asst. Attys. Gen. (Robert P. Stephenson, Asst. U. S. Atty., and James W. Osborne, Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Spooner & Cotton, of New York City, for defendant Baker.

Morgan J. O'Brien, of New York City, for defendants Cuyler, Milligan and Maxwell.

L. C. Krauthoff, of New York City, for defendant Vail.

HUNT, Circuit Judge.  The several applications made by the defendants Baker, Milligan, Maxwell, Cuyler, and Vail for a severance are granted.  None of the five moving defendants was a director of the New Haven Company prior to May 22, 1908.  Defendant Baker was elected a director on February 11, 1910.  Defendant Cuyler was elected on October 26, 1910, and defendants Vail, Maxwell, and Milligan on May 18, 1911.

It appears that upon May 22, 1908, the Attorney General of the United States filed a bill in the United States Circuit Court in Massachusetts against the New Haven Company and others, charging violations of the Anti-Trust Law of the United States, and that on June 26, 1909, by direction of the Attorney General, the above referred to suit was discontinued.  On June 25, 1909, the Senate of the United

States passed a resolution, and on the same day the Attorney General made a reply thereto. Copies of such resolution and the reply thereto are referred to by counsel who have presented these motions. The substance of the resolution of the Senate was a direction that the Attorney General inform the Senate whether the legal proceedings against the New York, New Haven & Hartford Railroad Company and the Boston & Maine Railroad Company for violation of the Anti-Trust Law had been dismissed, and, if any statement had been given out by the Attorney General, that he attach a copy of such statement to his reply to the resolution, and to inform the Senate when such proceedings were begun and instituted. The Attorney General, under date of June 25, 1909, replied that he had directed the United States Attorney for the district of Massachusetts to dismiss the legal proceeding brought by the United States against the New York, New Haven & Hartford Railroad Company and the Boston & Maine Railroad Company for violation of the Anti-Trust Law and that he had given out a statement touching the matter, copy of which statement he inclosed with his communication to the Senate. He advised the Senate that the proceedings were begun by the filing of a bill in equity in the Circuit Court for the District of Massachusetts on May 22, 1908.

The copy of statement which accompanied the letter of the Attorney General was dated June 24, 1909. It referred to an act of the Legislature of Massachusetts just theretofore approved, creating the Boston & Maine Railroad Holding Company, and giving authority to the new corporation to acquire and hold the stock and bonds of the Boston & Maine Railroad Company, and authorizing any railroad corporation theretofore incorporated under the laws of Massachusetts to acquire and hold the stock and bonds of the Boston Holding Company. Further substance of the statement was that the purpose and effect of the Massachusetts statute, as publicly announced and contemplated by its terms, was to authorize the consolidation of the Boston & Maine and New York, New Haven & Hartford Railroad Company by the Boston Holding Company first acquiring control of the Boston & Maine Railroad Company, and then by the New York, New Haven & Hartford Company acquiring the control of the Boston Holding Company; that the Massachusetts statute also provided that the stock of the Boston & Maine to be acquired by the Holding Company should not afterwards be sold without express authority from the Legislature; that the stock of the Holding Company, if acquired by the New Haven road, should not be sold without authority of the Legislature; that the commonwealth of Massachusetts might, by legislative action, upon one year's notice, take for its own use, by purchase or otherwise, all the stock and bonds of the Holding Company upon certain terms designed to protect creditors and secure just compensation, the whole plan and purpose being to promote the consolidation of the Boston & Maine with the New Haven Company and to provide for their operation hereafter under one management, with safeguards to protect the interests of the people of Massachusetts; that in view of the fact that the suit of the government then pending against the New Haven and the Boston & Maine Companies for violation of the Anti-Trust Act rested almost

entirely upon a claim that those companies had already consolidated by means of stock ownership, and since the state of Massachusetts was most directly affected, and since the laws of that state now expressly authorize such consolidation, the Attorney General had determined to dismiss the suit by the government. The statement then went on to say that in the suit brought complaint had been made that the New Haven Railroad had acquired a number of trolley lines in Massachusetts and adjoining states, and that this was a combination in restraint of interstate commerce, but that, since the suit by the government had been determined upon, the Supreme Court of Massachusetts, in a case involving the right of the New Haven to acquire trolley properties in Massachusetts, had decided that that railroad company had no such power, and that the company had been parting with such trolley properties. The Attorney General in the statement expressed his conviction that, whatever might have been the merit of the claim when the suit was begun, there was not, at the time he made the statement, any such element of competition in interstate commerce by reason of such ownership of trolley lines as would justify a further prosecution of the suit by the government. The statement concluded by saying that the Attorney General had directed that the case of the government against the New York, New Haven & Hartford Railroad Company and the Boston & Maine Company should be dismissed at once.

There is no dispute, at present, at least, of the statements made by counsel for these defendants that each defendant believed that, at the time he entered the board of the New Haven Company, all controversies with the government of the United States, and all questions of violations of the Anti-Trust Law, had been finally disposed of; and it would seem that no investigation or controversy concerning the subject was pending at that time. Such a situation may well have induced the belief that the board of directors would be, to a great extent, engaged in working through whatsoever complications had arisen in connection with the concerns of the New Haven Company resulting from transactions and causes which had arisen prior to the election of any one of these defendants, and it may be that each of these defendants went upon the board with the purpose of protecting the interests of the stockholders and of the corporation itself. At all events, enough appears to justify the view that the questions to be presented on the trial of these several defendants will probably be materially different from those which will be involved in the trial of the other defendants, with whom they have been jointly charged. Nor is it difficult to foresee possible serious antagonism between the positions of defense to be taken by these defendants and others charged jointly. Indeed, counsel for the United States frankly state that such a situation may arise, and that they do not oppose the severance applied for.

I therefore think these defendants ought not to be required to go to the inconvenience and expense incidental to the preparation for a long trial, which will probably extend to many matters in no way related to any one of themselves.